Argued and submitted November 6, 1981, at Pendleton,
reversed and remanded March 8, reconsideration denied April 13,
petition for review denied June 1, 1982 (293 Or 190)

SEIBEL et al,
*Appellants,*

*v.*

LAYNE & BOWLER, INC.,
*Respondent.*

(No. 11,556, CA 19246)

641 P2d 668

Michael B. Collins, Pendleton, argued the cause for appellants. On the briefs was Collins & Collins, Pendleton.

Charles D. Harms, Pendleton, argued the cause for respondent. With him on the brief was Leichner, Barker & Harms, P.C., Portland.

Before Richardson, Presiding Judge, Young, Judge, and Holman, Senior Judge.*

HOLMAN, S. J.

---

*Holman, S. J., *vice* Warden, J.

## HOLMAN, S. J.

This is an action for breach of contract, breach of warranty and negligence. Plaintiffs seek to recover consequential damages allegedly caused by the failure of the pump, which they purchased from defendant, to function properly. Defendant contends that recovery is foreclosed by contract provisions which disclaim all but a relatively limited warranty and which deny consequential damages. After a hearing to determine whether the disclaimer provisions were unconscionable, the trial court determined that recovery was barred and dismissed the complaint. Plaintiffs appeal.

Plaintiffs have been partners in a farming operation since 1960. There was a serious drought in Umatilla County in the 1977 crop year, so plaintiffs decided to install a well and a pump on their land. In February, 1977, they contacted defendant, which deals in a wide range of water service needs, in order to buy a pump. Plaintiffs allege that they informed defendant's agent at that time that they had an urgent need for a pump, because it was vital to irrigate their crop in the early months of the growing season. Defendant's agent, however, denied that he was aware of any urgency. In any case, the agent came to plaintiffs' farm on March 23, 1977, and a contract was signed. Specifications relating to plaintiffs' particular needs had already been discussed on the phone and had been typed on the front of the agreement; the general terms and conditions for all contracts of this type were printed on the reverse side and included the disclaimer provisions. It is plaintiffs' uncontradicted testimony that defendant's agent did not direct their attention to the reverse side and that they did not read it, although they had an opportunity to do so.

The contract indicated that the pump would be delivered, installed and tested during the week of March 31, 1977. It was delivered on April 11, and was tested on April 18. A problem arose in connection with installation; defendant was notified but did not return for several weeks. On May 5, the pump was reinstalled and tested by defendant. It still did not work. Nevertheless, defendant left plaintiffs' farm and did not return until late July, despite plaintiffs' requests. The pump also failed to perform properly after the July test. During the winter of 1977-78, additional work

was performed on the well, and the pump was reinstalled in early February, 1978, and tested on February 16. Following this test, defendant decided to redesign the pump, after which it was again reset in the well.

This case is governed by the Uniform Commercial Code (UCC), and, although plaintiffs assign 15 errors, there are only three significant issues on appeal: (1) are the disclaimers of warranty effective, *i.e.*, are they conspicuous; (2) does the parol evidence rule bar plaintiffs' allegations of certain express oral warranties; and (3) are the contract provisions which preclude consequential damages and which limit plaintiffs' remedies to repair and replacement effective?

*Disclaimer of warranties.*

On the reverse side of its sales contract, defendant makes a limited warranty, expressly disclaiming all other express or implied warranties, including merchantability, and limits its liability for breach of that warranty to the cost of repair.

A seller may disclaim warranties and limit liability under the UCC. ORS 72.3160; 72.7190. ORS 72.3160(2) requires, however, that a disclaimer of the warranty of either merchantability or fitness be "conspicuous," which is defined in ORS 71.2010(10):

> "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals * * * is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. * * * Whether a term or clause is 'conspicuous' or not is for decision by the court."

Official Comment 10 for this section indicates that the test is whether attention can reasonably be expected to be called to it. UCC § 1-201(10). A leading authority states that the rule has gradually developed that "a provision is not conspicuous when there is only a slight contrast with the balance of the instrument." J. White and R. Summers, *Uniform Commercial Code,* § 12-5 at 441 (2d ed 1980).

■ Here, the terms and conditions are printed on standard-size paper (8-1/2″ x 11″) and fill approximately

three-quarters of the page. These terms cover numerous aspects of the contractual relationship in addition to the disclaimers. The type is smaller than that used for footnotes in this court's permanent reports and the lines are longer and more closely spaced than in our footnotes. There is neither indentation nor extra spacing between paragraphs. The print is generally difficult to read. The exculpatory provisions themselves are set out no differently than the other terms. Only the paragraph headings, *e.g.,* "WARRANTY," stand out, but such a heading suggests the making of warranties, not their exclusion. *Massey-Ferguson v. Utley,* 439 SW2d 57, 59, 6 UCC Rep Serv 51 (Ky. Ct App 1969). In sum, there is nothing conspicuous about the disclaimers here, and we will not give them effect.

*Does the parol evidence rule bar plaintiffs' allegations of express oral warranties?*

Plaintiffs contend that defendant made various express oral warranties (ORS 72.3130(1)(a)) in agreeing to install the pump. ORS 72.3160(1) provides that oral warranties are subject to ORS 72.2020, the parol evidence rule: if the parties intended for the written contract to be a "final" expression of their agreement, then it may not be *contradicted* by additional terms, and if the parties intended for the contract to be the "complete and exclusive" statement of their agreement, then it may not be *supplemented* even by non-contradictory terms.

Defendant contends that the contract cannot be supplemented, because it contains a merger clause which indicates that it was intended to be a complete and exclusive expression of their agreement. ORS 72.2020 requires, however, that the *parties* intend for the agreement to be their complete expression. Because the merger clause is as inconspicuous as the disclaimers, it provides little or no evidence of the parties' intentions, regardless of the defendant's intentions. Moreover, under the UCC, courts are to limit the application of contract provisions so as to avoid any unconscionable result. ORS 72.3020. Official Comment 1 for this section indicates that a principal underlying unconscionability is the prevention of unfair surprise. UCC § 2-302. We think that it would be unconscionable to permit an inconspicuous merger clause to exclude

evidence of an express oral warranty — especially in light of the policy expressed by ORS 72.3160. That is, a disclaimer of the implied warranties of fitness and merchantability must be conspicuous to prevent surprise. We think that a merger clause which would deny effect to an express warranty must be conspicuous to prevent an even greater surprise.[1]

> *Is recovery for consequential damages barred by the contract provisions to that effect?*

■ ■   To be effective, contract provisions which limit the buyer's remedies for breach must be conspicuous or brought to the buyer's attention. *K-Lines v. Roberts Motor Co.,* 273 Or 242, 254, 541 P2d 1378 (1975); *Atlas Mutual Ins. v. Moore Dry Kiln,* 38 Or App 111, 114, 589 P2d 1134 (1979). Because *none* of the disclaimer provisions in this contract are conspicuous, and the limitation of remedies was not otherwise brought to plaintiffs' attention, these provisions are ineffective.

■   For the most part, resolution of the many assignments of error follow directly from our resolution of these three issues,[2] but one other assignment does require

---

[1] We recognize that a merger clause is appropriate where a seller wishes to protect himself from his over-enthusiastic salesman's unauthorized oral representations (and from a fabricated oral representation). But unless the buyer is informed that the seller is disavowing those representations, the seller cannot expect protection from his agent's errors.

In such circumstances, White and Summers recommend the following merger clause, which we endorse:

"THIS AGREEMENT SIGNED BY BOTH PARTIES AND SO INITIALED BY BOTH PARTIES IN THE MARGIN OPPOSITE THIS PARAGRAPH CONSTITUTES A FINAL WRITTEN EXPRESSION OF ALL THE TERMS OF THIS AGREEMENT AND IS A COMPLETE AND EXCLUSIVE STATEMENT OF THOSE TERMS. ANY AND ALL REPRESENTATIONS, PROMISES, WARRANTIES OR STATEMENTS BY SELLER'S AGENT THAT DIFFER IN ANY WAY FROM THE TERMS OF THIS WRITTEN AGREEMENT SHALL BE GIVEN NO FORCE OR EFFECT."

J. White and R. Summers, *supra,* at 90-91.

[2] The trial court is reversed on assignments 1, 2, 4, 5, 6, 7, 10 and 11. It is affirmed on assignments 3, 8, 9, 12, 13, 14 and 15, either because the issues are moot or because the counts which were dismissed are redundant.

Plaintiffs apparently have misconstrued the requirements of ORCP 21(E)(1) (separately to state two or more claims for relief) and have pleaded eleven separate counts. One count for breach of contract and one for breach of warranty

resolution. Plaintiffs allege in a separate count that defendant was "negligent" and breached its "duty of care" in failing to do certain things that it was obligated to do under the contract. There was no basis for an action in negligence. The trial court properly struck the count.

Reversed and remanded.

---

would have sufficed. Nothing prevents the pleading of express and implied contractual provisions in one count or the pleading of express and implied warranties in the same count. Surely the new rules of procedure do not contemplate the return to the complex pleading of the mid-19th century. *See also,* ORCP 16(B).