Argued and submitted April 12, reversed and remanded August 25, 1993

Arthur ANDERSON,
*Appellant,*

*v.*

ASHLAND RENTAL, INC.,
an Oregon corporation,
*Respondent.*

(91-3279-L-2; CA A76440)

858 P2d 470

Ronald K. Cue, Ashland, argued the cause and filed the brief for appellant.

Paul Silver, Portland, argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

Deits, P. J., dissenting.

**RIGGS, J.**

Plaintiff, a house painter, rented scaffolding from defendant. He signed a two-page contract. The first page contained the following disclaimer:

> "[Defendant] shall not be liable for any damage suffered by [plaintiff] resulting from non-performance or faulty performance of the equipment, including but not limited to poorwork [*sic*] product, time loss, inability to perform the task or any other cause whatsoever."

The back of the contract contained a similar disclaimer. While plaintiff was on the scaffolding, it tipped over, injuring him. He filed a complaint alleging negligence and strict liability. Defendant moved for summary judgment and attached a copy of the rental contract. The trial court found that the disclaimer of liability was conspicuous as a matter of law, ORS 71.2010(10), and barred plaintiff's claim. Defendant's motion for summary judgment was granted. Plaintiff appeals, and we reverse.

■ On appeal, plaintiff argues that the grant of summary judgment was error, because the disclaimer was inconspicuous and did not limit defendant's liability. A disclaimer in a contract can limit tort liability if it was either bargained for, brought to a party's attention or conspicuous. *Atlas Mutual Ins. v. Moore Dry Kiln*, 38 Or App 111, 114, 589 P2d 1134 (1979). Here, the dispositive issue is whether the disclaimer was conspicuous.

ORS 71.2010(10) provides the statutory definition of the term "conspicuous":

> "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals * * * is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. * * * Whether a term or clause is 'conspicuous' or not is for decision by the court."

The question of whether or not a disclaimer is conspicuous is a question of law. *Duyck v. Northwest Chemical Corp.*, 94 Or App 111, 116, 764 P2d 943 (1988), *rev den* 307 Or 405 (1989). Our analysis begins with the appearance of the disclaimer and the surrounding text. The first page of the contract is a

typographical nightmare. The following print sizes were used on the first page: 6 point, 7 point, 8 point, 9 point, 10 point, 11 point and 14 point.[1] In addition to a hodgepodge of print sizes, the contract uses various attention-getting devices, including bold type, capital letters, red type and reverse lettering.[2] The back of the contract is printed in type that is so light that it is barely legible.

■    Turning to the disclaimer on the front page, we must consider whether it is "so written that a reasonable person against whom it is to operate ought to have noticed it." ORS 71.2010(10). The disclaimer is printed in 7 point type, only slightly larger than the 6 point type used for the "fine print." The caption "Warranty Disclaimer" is in bold 8 point blue type, but its visual impact is minimized by adjacent captions printed in 8 point, bright red capital letters. The disclaimer is not printed in a "larger or other contrasting type or color" that would make it conspicuous. We conclude that, as a matter of law, the disclaimer on the front page is not conspicuous.

■    Defendant argues that an instruction to "READ BOTH SIDES BEFORE SIGNING" in 8 point reverse lettering, at the bottom of the page, met the statutory criteria for conspicuousness. ORS 71.2010(10). Even if we agreed that the message was conspicuous despite its proximity to much larger, more visible type, it does not necessarily follow that the *disclaimer* on the back side was conspicuous. That disclaimer was one of eight sections, all printed in the same, faint type, with identical headings. The second disclaimer was barely legible and fell far short of the ORS 71.2010(10) criteria.

Because we conclude that both disclaimers were inconspicuous as a matter of law, we need not address plaintiff's other assignments of error.

Reversed and remanded.

---

[1] To put these measurements in perspective, 6 point type is the proverbial "fine print," while 14 point type is approximately 1/4 inch in height and is very easy to read.

[2] "Reverse lettering" is a technique where the type is reproduced by printing the background of the letters rather than the letters themselves.

**DEITS, P. J.,** dissenting.

As explained in the majority opinion, plaintiff, alleging strict tort liability and negligence, sought damages for personal injuries resulting from the use of scaffolding equipment leased from defendant. The trial court granted defendant summary judgment on the basis of a warranty disclaimer and a limitation of liability clause in the rental agreement. Plaintiff appeals the summary judgment on the ground that the disclaimer and the limitation of liability clause were inconspicuous and, therefore, invalid. Plaintiff also argues that such clauses do not bar actions based on strict tort liability for the recovery of damages for personal injuries. The majority reverses the summary judgment for defendant, because it concludes that the disclaimer of warranties and the limitation of liability clause in the agreement are inconspicuous, as a matter of law. I disagree with that conclusion.[1]

The limitation of liability clause in the rental agreement purports to limit plaintiff's remedies to repair and replacement, whether the claim is in contract, tort or otherwise. This clause is intended to operate as both a limitation of remedies clause and an exculpatory clause. A limitation of remedies clause limits plaintiff's remedies under the Uniform Commercial Code (UCC) and, as such, has no effect on a claim based on negligence or strict liability in tort. ORS 72.7190; ORS 72A.5030. However, in this case, the limitation of liability clause also attempts to disclaim defendant's tort liability. The critical question then is whether the limitation of liability clause has effectively disclaimed defendant's tort liability.

The first issue that must be resolved is whether the limitation of liability clause was a valid part of the parties' agreement. The clause is valid if it was bargained for, brought to the other party's attention, or was conspicuous. *Atlas Mutual Ins. v. Moore Dry Kiln*, 38 Or App 111, 589 P2d 1134

---

[1] I would first note that the majority fails to distinguish between the effect of a disclaimer of warranties and a limitation of liability clause. Plaintiff's claims against defendant are based on negligence and strict liability in tort. Because plaintiff is not alleging a breach of warranty, the disclaimer of warranties contained in the parties' rental agreement is not at issue.

(1979). Although the UCC does not directly apply to plaintiff's claims based on negligence or strict liability in tort, the definition of "conspicuous" in the UCC provides useful guidance. It defines "conspicuous" as:

> "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." ORS 71.2010(10).

Here, the limitation of liability clause appears *on the back* of the one page rental agreement. However, there are admonitions to read both sides of the contract before signing. The first admonition appears at the bottom of the front page of the agreement just below the space for the lessee's signature. That admonition is in reverse lettering and is blocked in blue. On the back side of the agreement, the only text boxed with a solid black line, begins with the following heading in capital bold-face type: **"READ BOTH SIDES BEFORE SIGNING."** In my view, under these circumstances, the fact that the clause appears on the back of the agreement does not render it inconspicuous.

The clause appears at the top of the back page of the rental agreement. It has an indented heading, in easily readable bold type, and is followed by only slightly smaller text:

> **"Limitation of Liability:** Lessor has explained safety hazards and features of the equipment to Lessee. However, Lessee understands that there is an inherent risk associated with the use of the equipment and that not all potentially dangerous situations may be known or anticipated by either Lessor or Lessee. Lessee accepts all risks associated with the use of the equipment. Lessor's liability hereunder is limited to replacement of equipment or refund of rental payments, as lessor may choose. This is Lessee's sole and exclusive remedy whether in contractor [sic], tort or otherwise, and Lessor shall not be liable for injuries to persons or property resulting from Lessee's use, storage, transportation or operation of the equipment.

> "In no event shall lessor be liable for incidental or consequential damages or commercial losses of any nature, nor for any other loss or damage of any kind except as set forth above. Lessee shall save, defend and hold Lessor harmless

from any expense or liability in connection with this agreement."

In my view, a reasonable person ought to have noticed this provision. I would hold that the clause is conspicuous as a matter of law.

Having concluded that the limitation of liability clause is a valid part of the parties' rental agreement, it is necessary to determine if that clause effectively disclaims defendant's strict liability in tort. Plaintiff does not argue that the trial court erred in granting summary judgment for defendant on the negligence claim, because a limitation of liability clause cannot exempt defendant from negligence liability in tort. Therefore, I do not address that issue, and I would affirm the trial court's summary judgment for defendant on the negligence claim.

I would hold, however, that, under the existing case law, the clause does disclaim defendant's strict liability in tort. *K-Lines v. Roberts Motor Co.*, 273 Or 242, 541 P2d 1378 (1975). Plaintiff concedes that the *K-Lines* decision holds that parties of equal bargaining power, in a commercial setting, may disclaim strict liability in tort. Plaintiff attempts to distinguish *K-Lines* because (1) it was decided before the 1979 codification of § 402A of the *Restatement (Second) Torts* in ORS 30.900 *et seq*; (2) it involved only a claim for property damage between business parties in a commercial setting; and (3) the court's reasoning was based, in part, on §§ 574 and 575 of the *Restatement Contracts*, which have been superseded by § 195 of the *Restatement (Second) Contracts*.

In 1979, the Oregon legislature codified § 402A, along with *comments a* through *m*, in ORS 30.900 *et seq*. Plaintiff argues that *comment m* supports his contention that a limitation of liability clause is ineffective to disclaim strict liability in tort. *Comment m* states:

"The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties * * *. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other

agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort."

However, the plaintiff in *K-Lines* made the same argument on the basis of *comment m* that plaintiff advances here. The court rejected that argument, reasoning:

"Comment m. to Restatement (Second) § 402A was meant to explain that * * * garden variety disclaimers were not sufficient to disclaim the strict liability established by 402A because 402A was not based on warranty. It means simply that a disclaimer of '*warranties*' is not sufficient to affect strict liability in tort. We do not take it to mean that an agreement to bar all tort remedies is treated the same, regardless of whether such agreement is denominated a disclaimer, exclusion or limitation." (Emphasis in original.)

The fact that § 402A and *comment m* have now been codified does not provide a basis to reject the holding in *K-Lines*. I also do not agree with plaintiff that *K-Lines* is distinguishable because it involved only a claim for property damage between two commercial parties. The holding in *K-Lines* permitted parties to disclaim strict liability in tort. A disclaimer disallows the existence of a cause of action. On the other hand, a limitation of remedies clause or a limitation on consequential damages clause acknowledges a potential cause of action but limits the damages that are recoverable. By holding that a party may disclaim strict liability in tort, the court necessarily allowed the prohibition of recovery for *any* injury on that theory.

Plaintiff's argument that *K-Lines* is not controlling because of the fact that §§ 574 and 575 of the first *Restatement* have been superseded by § 195 of the *Restatement (Second) Contracts*, since the time that *K-lines* was decided, deserves comment. The court's holding in *K-Lines* was based, in part, on §§ 574 and 575. Those sections permitted bargained for exemptions from negligence liability. Under § 574, negligence, but not gross negligence, could be disclaimed. Section 575 provided that a disclaimer of negligence liability would be contrary to public policy under the following situations: (1) between employer and employee; (2) if one of the

parties was charged with a public service. The first *Restatement* did not address disclaimers of strict liability in tort. However, in *K-Lines*, the Supreme Court said:

> "In considering [§ 574] of the Restatement permitting exemption from liability for the consequences of negligence, it should be remembered that strict liability in tort imposes liability without proof of negligence." 273 Or at 249.

The court's reasoning, that because a party may disclaim liability for negligence a party should also be able to disclaim strict liability in tort, is brought into question by the adoption of § 195 of *Restatement (Second) Contracts*. Section 195, including *comment c*, as it applies to disclaimers of strict liability in tort, provides:

> "(3)   A term exempting a seller[2] of a product from his special tort liability for physical harm to a user or consumer is unenforceable on grounds of public policy unless the term is fairly bargained for and is consistent with the policy underlying that liability."

*Comment c* explains the scope of subsection 3, quoted above:

> "*c.    Strict product liability.* One who sells a product in a defective condition unreasonably dangerous to the user or consumer or to his property is subjected to liability for resulting physical harm under the rule stated in Restatement, Second, Torts § 402A. In general, a term exempting the seller from this liability is unenforceable on grounds of public policy. See Comment *m* to Restatement, Second, Torts § 402A. Subsection (3) states an exception for the rare situation in which the term is consistent with the policy underlying the liability. This might be the case, for example, for a term in a fairly negotiated contract between two merchants for the sale of an experimental product. Such a term would not, however, affect the rights of one who was not a party to the contract."

There are strong public policy concerns underlying strict liability in tort: (1) protecting consumers from defective products that are unreasonably dangerous; (2) placing the risk of loss due to a product in a defective condition that is unreasonably dangerous on the party capable of minimizing

---

2 *Restatement (Second) Torts* § 402A limits product liability to those who sell products. However, ORS 30.920, the Oregon codification of § 402A, explicitly applies to lessors as well.

that risk; and (3) placing the risk of loss on the party most capable of absorbing the loss. Those public policy concerns are compromised by permitting a party to disclaim its strict liability in tort. Nonetheless, I believe that *K-Lines v. Roberts Motor Co., supra,* remains controlling and that this court is not at liberty to depart from its holding that a fairly bargained for limitation of liability clause is effective to disclaim strict liability in tort. The limitation of liability clause in the rental agreement signed by plaintiff unambiguously exempts defendant from claims based on strict liability in tort. The trial court properly granted defendant summary judgment on the ground that the limitation of liability clause in the rental agreement bars plaintiff's claims for negligence and strict liability in tort. Accordingly, I dissent.