Hubert B. FINCH,
*Appellant,*

*v.*

Ray ANDREWS,
The National Hot Rod Association,
a California corporation,
and John Does 1-15,
*Respondents.*

(91-2042-L-1; CA A78081)

863 P2d 496

Robert S. Hamilton argued the cause for appellant. With him on the brief was Frohnmayer, Deatherage, Pratt, Jamieson & Turner, P.C.

Hugh B. Collins argued the cause and filed the brief for respondents.

Before De Muniz, Presiding Judge, and Leeson and Landau, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Plaintiff sued defendants Andrews, who was the driver of a dragster, and the National Hot Rod Association (NHRA) to recover damages for personal injuries sustained during a drag race. He appeals from a summary judgment in favor of defendants. ORCP 47. We affirm.

■　We review the record in the light most favorable to plaintiff, the party opposing defendants' motion for summary judgment. *Poirier v. United Grocers, Inc.*, 110 Or App 592, 594, 824 P2d 1158, *rev den* 313 Or 210, 820 P2d 596 (1992). Plaintiff, a seasonal Jackson County employee, worked as a track starter for the Jackson County Sports Park drag strip on two weekends a month during the racing season. He was employed elsewhere on a full-time basis.

Jackson County had a contract with NHRA, under which NHRA would provide personnel, coordination and supervision at the drag races. In order to continue employment at the drag strip, Jackson County required that plaintiff sign a release and waiver contract (release). The release relieved NHRA, Andrews and others from liability for negligent acts causing injury to plaintiff. During a race, a dragster driven by Andrews struck and injured plaintiff.

The trial court granted defendant's motion for summary judgment on the ground that plaintiff had assumed the risk of injury when he signed the release. On appeal, plaintiff contends that the release is void as a matter of public policy. Defendants argue that release contracts are valid unless they fall under a recognized public policy exception and that no such exception applies here.

■■　Plaintiff does not dispute that, as a general rule, release contracts are upheld unless they contravene public policy.[1] *See, e.g., Poirier v. United Grocers, Inc., supra.* He argues, however, that, when such agreements are made between employers and employees, they are against public policy. *K-Lines v. Roberts Motor Co.*, 273 Or 242, 249, 541 P2d 1378 (1975); *Restatement (Second) Contracts* § 195(2)(a)

---

[1] A public policy must be "overpowering" before a court will interfere with the parties' freedom to contract. *Young v. Mobil Oil Corp.*, 85 Or App 64, 69, 735 P2d 654 (1987).

(1981). He also contends that such agreements should be void when employers require their employees to release third parties from liability.

Defendants counter that the release does not contravene public policy. They acknowledge that, under earlier law, agreements between employees and employers releasing the latter from liability were held invalid as against public policy. Defendants argue, however, that the rationale behind those cases, which was that employers subjected their employees to economic coercion, no longer applies. They claim that employers can no longer exploit their employees, because employees have more rights against employers than they did in the past, for example, workers' compensation laws, ORS chapter 656. Accordingly, defendants argue that, because the rationale supporting the public policy exception between employers and employees has weakened, we should not extend the reach of the public policy exception to benefit those who were not parties to the contract.

We need not decide whether defendants' criticism of the rationale behind employer-employee liability release contracts has merit, because here the rationale by which those contracts were found to be against public policy does not apply. Plaintiff's employer did not place him at an unfair disadvantage or leave plaintiff with no other alternative than to sign the agreement, because his job at the drag strip was not his means of livelihood. At the summary judgment proceeding, there was evidence that plaintiff worked at the drag strip for only a few hours per month for a few months per year. He voluntarily chose to work at the drag strip, even though he had a full-time job elsewhere, because he was an avid racing hobbyist. It appears that plaintiff's main purpose for working at the drag strip was to gain access to the restricted racing area. Employer's requirement that he sign the agreement in order to continue the employment did not place plaintiff at an unfair disadvantage sufficient to violate public policy. Summary judgment was proper.

Affirmed.