Argued and submitted September 23, 1994, affirmed September 27, 1995, petition for review allowed January 23, 1996 (322 Or 489)

Richard Craig ESTEY,
an individual,
*Appellant,*

*v.*

MACKENZIE ENGINEERING INCORPORATED,
an Oregon corporation;
and Leonard Krombein, an individual,
*Respondents.*

(9212-08572; CA A82218)

902 P2d 1220

Charles F. Hinkle argued the cause for appellant. With him on the briefs were Guy A. Randles, Eric A. Grasberger and Stoel Rives Boley Jones & Grey.

Karen O'Kasey argued the cause for respondents. With her on the brief were Richard J. Kuhn and Schwabe, Williamson & Wyatt.

Before Richardson, Chief Judge, and De Muniz and Leeson, Judges.

RICHARDSON, C. J.

## RICHARDSON, C. J.

Plaintiff brought an action against defendants MacKenzie Engineering, Inc. (MEI) and Leonard Krombein, an employee of MEI, alleging negligence, negligent misrepresentation and breach of contract. The trial court granted defendants' motion for summary judgment based on a limitation of liability clause in the parties' contract for professional services. We affirm.

Plaintiff contracted with MEI for a "limited visual review" of a house that he intended to purchase. The contract consisted of one page that set out the estimated contract sum of $200 and the scope of work to be completed. It also contained a clause that provided:

> "The liability of MEI and the liability of its employees are limited to the Contract Sum."

The agreement was signed by plaintiff. Pursuant to the contract, Krombein conducted a limited visual review of the house and provided plaintiff with a two-page written report.

Plaintiff subsequently purchased the house. Six weeks later, plaintiff discovered that a broken water pipe had been leaking beneath the house prior to the date of Krombein's inspection. He also noticed that the floors in the house "slanted in an easterly direction." Plaintiff hired another engineering firm to inspect the house and has since spent a substantial amount of money repairing and stabilizing it. Plaintiff sought damages of $340,000 in his complaint.

Defendants moved for summary judgment, asserting the limitation of liability clause contained in the contract as an affirmative defense. Plaintiff moved for partial summary judgment on the ground that the limitation of liability clause was not enforceable. The trial court granted defendants' summary judgment motion, concluding that the contract limited defendants' liability for negligence, negligent misrepresentation and breach of contract. The parties stipulated that, "if enforceable, the limitation of liability clause constitutes a complete bar to plaintiff's claims for damages." On appeal, plaintiff assigns error to the trial court's ruling and asserts that the clause limiting defendants' liability for negligence is unenforceable.

■ Agreements to limit the extent of a party's liability for tortious conduct are described as not favored by the courts, but neither are they automatically void. *K-Lines v. Roberts Motor Co.*, 273 Or 242, 248, 541 P2d 1378 (1975). We have said that

> "[a]n agreement limiting liability is governed by principles of contract law and will be enforced in the absence of some consideration of public policy derived from the nature of the subject of the agreement or a determination that the contract was adhesionary."

*Mann v. Wetter*, 100 Or App 184, 187, 785 P2d 1064, *rev den* 309 Or 645 (1990). Plaintiff makes a number of arguments in support of his assertion that the clause is unenforceable. First, he argues that the clause was not negotiated by the parties nor brought to his attention.[1] Defendants argue that even if the clause was not negotiated or discussed by the parties, it was conspicuous.

In *K-Lines*, the Supreme Court said that limitation clauses are enforceable, even in the absence of explicit evidence of "haggling" or negotiation, provided that the limitation is part of the parties' bargain in fact. 273 Or at 253. In *Anderson v. Ashland Rental, Inc.*, 122 Or App 508, 510, 858 P2d 470 (1993), we held that a clause in a contract can limit tort liability if it was either "bargained for, brought to a party's attention or conspicuous." *See also Atlas Mutual Ins. v. Moore Dry Kiln*, 38 Or App 111, 114, 589 P2d 1134 (1979). In this case, both parties agree that they never specifically bargained for or discussed the clause. Consequently, whether it was part of the parties' bargain in fact depends on whether it is conspicuous. In determining whether a clause is conspicuous, we have turned to the Uniform Commercial Code (UCC) for guidance, even in cases not governed by the UCC. *Anderson*, 122 Or App at 510, 513. The UCC states:

> "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." ORS 71.2010(10).

---

[1] In fact, plaintiff did not even recall signing the contract. However, a person is not excused from the consequences of signing a contract that he or she fails to read. *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 398, 487 P2d 80 (1971).

Whether a clause is conspicuous is a question of law for the court. ORS 71.2010(10); *Anderson*, 122 Or App at 510.

■ In this case the contract consists of four paragraphs, six sentences, that covers only three-quarters of an 8-1/2 by 11-inch page. The limitation of liability clause is the third paragraph and consists of one sentence. All of the type in the contract is the same, and each paragraph is separated by a blank line. Although the limitation of liability clause is not in bold type or capitalized, it is not hidden in the middle of a lengthy written agreement, nor is the print difficult to read or understand. *See, e.g., Anderson*, 122 Or App at 510-11 (contract was "typographical nightmare," which used a "hodge-podge of print sizes," bolding, colors and capitalization); *Seibel v. Layne & Bowler, Inc.*, 56 Or App 387, 641 P2d 668, *rev den* 293 Or 190 (1982) (print used in contract generally difficult to read, used type smaller and more closely spaced than that used for footnotes in court's permanent reports). The clause is located squarely in the middle of a one-page contract. As the trial court stated:

> "The contract is extremely simple containing four short paragraphs. A reader would have to make a real effort for the limited liability clause to escape his or her attention."

We conclude that a reasonable person would have noticed the limitation clause. The provision is conspicuous and a part of the parties' agreement.

■■ We turn next to plaintiff's argument that limitation of liability clauses are strictly construed and do not operate to limit liability for negligence unless they include an express provision to that effect. He relies on *Transamerica Ins. Co. v. U.S. Nat'l Bank*, 276 Or 945, 951, 558 P2d 328 (1976), in which the Supreme Court said that "a contract will not be construed to provide immunity from the consequences of a party's own negligence unless that intention is clearly and unequivocally expressed." However, a provision need not specifically discuss negligence to limit liability for negligence. In *Atlas Mutual Ins.*, we interpreted the language "nor will we be liable for * * * damages of any kind sustained by you *from any cause*" to manifest the intent that defendant be free from liability for negligence. 38 Or App at 115 (emphasis supplied). In this case, defendants used the language "[t]he liability of MEI and the liability of its employees are limited to

the Contract Sum." It is clear that defendants' intent was to limit the extent of their liability to the contract amount. Although it is true that such intent must be expressed, it does not follow that this requires defendants to spell out every possible type of liability. The language used in the limitation clause encompasses all claims brought against defendants in the performance of the contract, including plaintiff's claim for negligence.

Plaintiff argues that, even if the clause is construed to limit liability for defendants' negligence, it would be against public policy to allow defendants to limit their liability in the context of this consumer transaction. Here, there is no public policy consideration that prevents defendants from limiting their liability for negligence. Defendants do not provide an essential public service, such as banks, common carriers, or utility companies provide. *See Real Good Food v. First National Bank*, 276 Or 1057, 1061, 557 P2d 654 (1976) (bank not allowed to limit liability for negligence of employees); *see also Restatement (Second) of Torts* § 496B, *comment g* (1965). Nor are they charged with a duty of public service. A public policy must be "overpowering" before a court will interfere with the parties' freedom to contract on public policy grounds. *See, e.g., Finch v. Andrews*, 124 Or App 558, 560, 863 P2d 496 (1993), *rev dismissed* 320 Or 267 (1994); *Young v. Mobil Oil Corp.*, 85 Or App 64, 69, 735 P2d 654 (1987). Here there is no "overpowering" public policy to justify interfering with the parties' freedom to contract.

There is nothing in the record to indicate that the contract was one of "adhesion." There is no indication that defendants possessed unequal bargaining power, or that plaintiff did not have alternatives in hiring MEI to inspect the house. Plaintiff, if he had read and disagreed with the limitation of liability clause, was free to seek inspection services from a variety of other sources. Plaintiff argues that he is an individual homeowner and not a sophisticated business concern dealing with an engineering firm; thus, the transaction is inherently unequal. We have held that, in the absence of a public policy, a release of liability applies even between a corporation and an individual. *Poirier v. United Grocers, Inc.*, 110 Or App 592, 597, 824 P2d 1158, *rev den* 313 Or 210

(1992). In this case, there is no public policy concern that dictates a different result.

Plaintiff does not make a separate argument with regard to the enforceability of the limitation clause on his claims for breach of contract and negligent misrepresentation. Therefore, we conclude that the limitation clause is valid and enforceable. Consistent with the parties' stipulation, defendants are entitled to judgment on all claims.

Affirmed.